IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JACK MILLER,** | § | |
| *Plaintiff* | § | **CAUSE NO.** |
| | § | |
| **v.** | § | |
| | § | |
| **ROXANNE CARDONA,** | § | |
| *In her official and personal* | § | |
| *Capacities* | § | |
| **JASON RENDON,** | § | |
| *In his official and personal* | § | |
| *Capacities* | § | |
| *Defendants* | § | |

## COMPLAINT

Plaintiff, JACK MILLER, complaining of the Defendants, alleges and

says:

## PARTIES

Plaintiff Jack Miller is a resident of Texas.

Defendant Roxanne Cardona is a resident of Texas and at all times

relevant to this Complaint was the Police Chief of the Kirby Police

Department, acting under color of state law.

Defendant Jason Rendon is a resident of Texas and at all times relevant to this Complaint was an officer of the Kirby Police Department, acting under color of state law.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 USCS § 1331 and 28 USCS § 1343, as this action arises under the Constitution and laws of the United States, specifically , to redress the deprivation of rights secured by the First Amendment , the Fourth Amendment, and the Fourteenth Amendment to the United States Constitution.

2. This Court has personal jurisdiction over Defendant Roxanne Cardona because she is a resident of the State of Texas.

3. This Court has personal jurisdiction over Defendant Rendon because he is a resident of the State of Texas.

4. Venue is proper in this Court pursuant to 28 USCS § 1391, as all defendants reside in the State of Texas and in this judicial district, and a substantial part of the events giving rise to the claims occurred in Kirby, Texas, which is located within this judicial district.

## STATEMENT OF FACTS

*Background: Plaintiff's Protected Speech Regarding Illegal Signage*

5. Over the course of several months prior to May 2023, Plaintiff addressed the City of Kirby's decision to place illegal signs pursuant to Texas Penal Code sections 30.06 and 30.07 at city council meetings.

6. These signs purported to make it a Class C misdemeanor to enter the council meetings with a handgun while possessing a Texas handgun license, despite state law prohibiting the City from posting such signs.

7. Plaintiff spoke at various council meetings about this issue, addressing his concerns directly with council members, Defendant Cardona, and the city manager.

8. Plaintiff urged the City to remove the illegal signs to allow licensed citizens to legally carry during council meetings in accordance with state law.

9. The City dismissed Plaintiff's concerns, asserting that his worry about someone entering with a firearm was moot because the City had police screening at the entrance and metal detectors that would catch any such person.

10. Plaintiff repeatedly explained that someone could bring prohibited items through security and that police would not catch them because

security personnel did not screen purses with metal detection equipment but only looked inside and used a drumstick to move items around.

11.    Defendants laughed at Plaintiff's concerns, calling them ridiculous, and cited that such a security breach had never happened before.

### *The May 25, 2023 Council Meeting Demonstration*

12.    On May 25, 2023, Plaintiff attended a Kirby City Council meeting.

13.    Prior to the meeting, Plaintiff purchased a toy replica Glock 22 airsoft pistol training device.

14.    The airsoft device was made of metal and was only capable of firing a 6mm plastic pellet in a manner that was not capable of causing bodily injury.

15.    Police use such airsoft devices in shooting training with only eye protection.

16.    Plaintiff tucked the toy into the front center of his pants for demonstrative purposes to educate the council about the lack of adequate security.

17.    When Plaintiff entered the council meeting venue, the toy set off the standing metal detector scanner.

18.    When security personnel used a handheld wand on Plaintiff, the toy also set off the wand.

19. Plaintiff suggested the alarm was caused by his belt buckle.

20. Security personnel dismissed the alarm and allowed Plaintiff to enter with the toy airsoft pistol.

21. Kirby Police Officers never detected the toy during the security screening.

22. Plaintiff waited his turn to speak during the "citizens to be heard" portion of the meeting.

23. During his allotted time to speak, Plaintiff began his demonstrative presentation, showing that since he was able to enter with the toy with no great effort on his part, any person could, in fact, enter with a handgun or any other device, despite the security measures the City claimed would prevent such entry.

24. Plaintiff's demonstration embarrassed Defendant Cardona and the City by exposing the lapses in security.

25. Police officers confiscated Plaintiff's toy and allowed him to continue his speech.

26. Officers, including Defendant Cardona who was present at the meeting, determined on the spot that the toy was, in fact, a "BB gun" and that no law, including disorderly conduct, had been broken during Plaintiff's presentation and demonstration.

27. The police officers were visibly upset and voiced their discontent about how Plaintiff conducted his demonstration because it made them look bad.

28. Defendant Grider and Defendant Cardona approached City Councilwoman Maria Lozano and pressured her to be the complaining witness to have Mr. Miller charged with disorderly conduct.

*Retaliatory False Charges - May 25, 2023 Incident*

29. In retaliation for the embarrassment caused by Plaintiff's demonstration, Defendants filed knowingly false affidavits in support of warrants and charges to have Plaintiff arrested.

30. Defendants charged Plaintiff with disorderly conduct under Texas Penal Code section 42.01(a)(8) for display of a firearm or deadly weapon, despite knowing that Plaintiff did not carry a firearm.

31. Defendants also charged Plaintiff with unlawful carry of a firearm, despite knowing that Plaintiff did not carry a firearm.

32. An arrest warrant was issued on March 22, 2024, based on a complaint to Defendant Cardona.

33. Defendant Cardona frequently targets Plaintiff based on his criticism of her, her department, and the City.

*The January 6, 2024 Incident*

34.   On January 6, 2024, Plaintiff was assisting a friend on Landis Drive with a conflict regarding a property dispute.

35.   While Plaintiff was there, a neighbor, Chad Covin, approached Plaintiff driving a skid steer at a quick pace directly at Plaintiff's truck.

36.   Mr. Covin's actions caused Plaintiff to fear that his vehicle would be hit.

37.   Plaintiff stepped out of his vehicle and pointed a pepper gel dispenser at Mr. Covin.

38.   Plaintiff told Mr. Covin that the device was a pepper gel dispenser.

39.   Defendant Rendon responded to the call regarding this incident.

40.   Defendents knew that the device was a pepper gel dispenser.

41.   Defendant Rendon personally inspected the pepper gel dispenser on the scene and determined it was not a firearm or deadly weapon.

42.   Defendant Rendon and Chad Covin discussed the fact that it was not a deadly weapon or firearm and confirmed it was a pepper gel dispenser.

43.   It was determined on the scene that the device was not a firearm.

*Retaliatory False Charges - January 6, 2024 Incident*

44. Despite knowing that the device was a pepper gel dispenser and not a firearm, Defendant Rendon later filed an affidavit for a warrant for Plaintiff's arrest.

45. In the affidavit, Defendant Rendon falsely stated that Plaintiff used a firearm to commit an aggravated assault with a deadly weapon.

46. Defendant Rendon also falsely charged Plaintiff with unlawful carry of a firearm.

47. Defendant Rendon knew these statements were untrue when he made them.

*Injuries Resulting from False Arrests*

48. On or about March 25, 2024, Plaintiff was arrested and charged with aggravated assault with a deadly weapon and disorderly conduct based on the false reports from Defendants.

49. His home was raided and all of his electronic equipment was confiscated without cause, necessity, or reason.

50. As a result of the false arrests based on the knowingly false affidavits filed by Defendants, Plaintiff spent approximately seven days in jail.

51. Plaintiff incurred over $17,500 in attorney fees to defend against the false charges.

52.    Plaintiff paid $6,500 for bonds to be released from jail on the false charges.

53.    Plaintiff suffered emotional distress, humiliation, and reputational harm as a result of the false arrests and prosecutions.

## CLAIMS FOR RELIEF

### Count I - Retaliation for Protected Speech in Violation of the First Amendment under
### 42 USCS § 1983
### *(against Defendants Cardona and Rendon)*

54.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 48 as if fully set forth herein.

55.    Plaintiff engaged in conduct protected by the First Amendment USCS Const. Amend. 1.

56.    Plaintiff's protected conduct included criticizing the City's illegal posting of signs prohibiting licensed handgun carry at council meetings, speaking at public council meetings about matters of public concern, urging government officials to comply with state law, and demonstrating security vulnerabilities at a public meeting.

57.    These activities involved matters of public concern, specifically government policy, public safety, and compliance with law.

58.    Plaintiff's speech occurred in a public forum and addressed issues of legitimate public interest.

59. Defendants knew or should have known that Plaintiff's conduct was constitutionally protected.

60. Defendants took adverse action against Plaintiff.

61. The adverse action consisted of filing knowingly false affidavits in support of arrest warrants, causing Plaintiff's arrest, and subjecting Plaintiff to criminal prosecution.

62. The adverse action was substantially motivated by Plaintiff's protected conduct.

63. Officers were visibly upset and voiced that Plaintiff's demonstration made them "look bad."

64. Defendant Cardona frequently targets Plaintiff based on his criticism of her, her department, and the City.

65. The timing of the charges, filed months after the May 25, 2023 incident despite the on-scene determination that no law was broken, demonstrates retaliatory motive.

66. The adverse action caused injury to Plaintiff that would chill a person of ordinary firmness from continuing to engage in protected speech.

67. Plaintiff spent seven days in jail, incurred over $15,000 in attorney fees, and paid $6,500 for bond as a direct result of Defendants' retaliatory actions.

68. These injuries would deter a person of ordinary firmness from continuing to criticize government officials and policies.

69. Defendants acted under color of state law as police officials of the Kirby Police Department.

70. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered damages including loss of liberty, financial losses, emotional distress, and reputational harm.

## Count II - False Arrest in Violation of the Fourth Amendment under 42 USCS § 1983
### (against Defendants Cardona and Rendon)

71. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 65 as if fully set forth herein.

72. Defendants arrested or caused the arrest of Plaintiff.

73. On May 25, 2023, Defendant Cardona and other officers determined on the spot that the airsoft toy was a "BB gun" and that no law had been violated.

74. Despite this determination, Defendants Cardona and Rendon filed false affidavits in support of arrest warrants charging Plaintiff with disorderly conduct and unlawful carry of a firearm.

75. Defendants knew that Plaintiff did not carry a firearm on May 25, 2023.

76.    On January 6, 2024, Defendant Rendon and other officers identified Plaintiff's device as a pepper gel dispenser on the scene.

77.    Despite this identification, Defendant Rendon filed a false affidavit charging Plaintiff with aggravated assault with a deadly weapon and unlawful carry of a firearm.

78.    Defendant Rendon knew that Plaintiff did not carry a firearm on January 6, 2024.

79.    The arrests were without probable cause.

80.    Defendants knew the affidavits contained false statements when they filed them.

81.    No reasonable officer could have believed that probable cause existed to arrest Plaintiff for carrying a firearm when Defendants knew Plaintiff did not carry a firearm.

82.    Plaintiff was injured as a result of the arrests.

83.    Plaintiff spent approximately seven days in jail.

84.    Plaintiff incurred over $15,000 in attorney fees.

85.    Plaintiff paid $6,500 for bond to secure his release.

86.    Plaintiff suffered emotional distress, humiliation, and reputational harm.

87. Defendants acted under color of state law as police officials of the Kirby Police Department.

88. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages including loss of liberty, financial losses, emotional distress, and reputational harm.

## Count III - Malicious Prosecution in Violation of the Fourth Amendment under
## 42 USCS § 1983
### *(against Defendants Cardona and Rendon)*

89. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 83 as if fully set forth herein.

90. Defendants initiated criminal prosecutions against Plaintiff.

91. Defendants initiated the prosecutions by filing knowingly false affidavits in support of arrest warrants.

92. The prosecutions were without probable cause.

93. Defendants knew that Plaintiff did not carry a firearm on May 25, 2023, as they had determined on the spot that the airsoft toy was a "BB gun" and that no law had been violated.

94. Defendants knew that Plaintiff did not carry a firearm on January 6, 2024, as they had identified the device as a pepper gel dispenser on the scene.

95.    No reasonable officer could have believed that probable cause existed to prosecute Plaintiff for carrying a firearm when Defendants knew Plaintiff did not carry a firearm.

96.    The prosecutions were malicious and done with a purpose other than bringing Plaintiff to justice.

97.    Defendants filed the false affidavits in retaliation for Plaintiff's protected speech criticizing government policies and exposing security vulnerabilities.

98.    Officers were visibly upset and voiced that Plaintiff's demonstration made them "look bad."

99.    Defendant Cardona frequently targets Plaintiff based on his criticism of her, her department, and the City.

100.  The prosecutions were initiated to punish Plaintiff for his protected speech and to deter him from future criticism, not to bring him to justice.

101.  Prosecution terminated in Plaintiff's favor with dismissal of the charges against him.

102.  Plaintiff was injured as a result of the prosecutions.

103.  Plaintiff spent approximately seven days in jail.

104.  Plaintiff incurred over $15,000 in attorney fees defending against the false charges.

105.  Plaintiff paid $6,500 for bond.

106.  Plaintiff suffered emotional distress, humiliation, and reputational harm.

107.  Defendants acted under color of state law as police officials of the Kirby Police Department.

108.  As a direct and proximate result of Defendants' malicious prosecution, Plaintiff has suffered damages including loss of liberty, financial losses, emotional distress, and reputational harm.

## Count IV - Deprivation of Liberty Without Due Process in Violation of the Fourteenth Amendment under 42 USCS § 1983
### *(against Defendants Cardona and Rendon)*

109.  Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 103 as if fully set forth herein.

110.  Defendants deprived Plaintiff of a liberty interest protected by the Fourteenth Amendment  USCS Const. Amend. 14.

111.  Defendants caused Plaintiff to be arrested and jailed for approximately seven days.

112. Plaintiff's liberty interest in freedom from physical restraint is a fundamental right protected by the Due Process Clause of the Fourteenth Amendment.

113. The deprivation was without due process of law.

114. Defendants filed knowingly false affidavits in support of arrest warrants.

115. The affidavits falsely stated that Plaintiff carried a firearm when Defendants knew he did not.

116. Plaintiff was arrested and jailed based on these knowingly false affidavits.

117. Plaintiff was not afforded the opportunity to challenge the false statements in the affidavits before being arrested and deprived of his liberty.

118. No pre-deprivation hearing or other procedural safeguards were provided to Plaintiff.

119. Defendants acted intentionally and with reckless disregard for Plaintiff's constitutional rights.

120. Defendants knowingly made false statements in the affidavits with the intent to cause Plaintiff's arrest.

121. Defendants knew their statements were false at the time they made them.

122. Defendants acted with deliberate indifference to Plaintiff's right to liberty.

123. Plaintiff was injured as a result of the deprivation.

124. Plaintiff spent approximately seven days in jail.

125. Plaintiff incurred over $15,000 in attorney fees.

126. Plaintiff paid $6,500 for bond.

127. Plaintiff suffered emotional distress, humiliation, and reputational harm.

128. Defendants acted under color of state law as police officials of the Kirby Police Department.

129. As a direct and proximate result of Defendants' deprivation of Plaintiff's liberty without due process, Plaintiff has suffered damages including loss of liberty, financial losses, emotional distress, and reputational harm.

## Count V - Conspiracy to Deprive Constitutional Rights in Violation of 42 USCS § 1985
### *(against Defendants Grider, Cardona, and Rendon)*

130. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 124 as if fully set forth herein.

131.  Two or more persons conspired together.

132.  Defendants Cardona and Rendon conspired together to deprive Plaintiff of his constitutional rights.

133.  The conspiracy was for the purpose of impeding, hindering, obstructing, or defeating the due course of justice with intent to deny Plaintiff equal protection of the laws.

134.  Defendants conspired to file knowingly false affidavits in support of arrest warrants against Plaintiff.

135.  The purpose of the conspiracy was to obstruct justice by causing Plaintiff's false arrest and prosecution.

136.  The conspiracy was intended to deny Plaintiff equal protection by depriving him of his constitutional rights through false prosecution.

137.  The conspiracy was motivated by animus toward Plaintiff based on his protected speech criticizing the City's policies and exposing security vulnerabilities.

138.  Officers were visibly upset and voiced discontent about how Plaintiff's demonstration made them "look bad."

139.  Defendant Cardona frequently targets Plaintiff based on his criticism of her, her department, and the City.

140. One or more conspirators performed an overt act in furtherance of the conspiracy.

141. Defendants performed overt acts by filing the knowingly false affidavits.

142. Defendant Cardona filed or caused to be filed a false affidavit regarding the May 25, 2023 incident.

143. Defendant Rendon filed a false affidavit regarding the January 6, 2024 incident.

144. These overt acts directly caused Plaintiff's arrest and prosecution.

145. Plaintiff was injured as a result of the conspiracy.

146. Plaintiff spent approximately seven days in jail.

147. Plaintiff incurred over $15,000 in attorney fees.

148. Plaintiff paid $6,500 for bond.

149. Plaintiff suffered emotional distress, humiliation, and reputational harm.

150. As a direct and proximate result of Defendants' conspiracy, Plaintiff has suffered damages including loss of liberty, financial losses, emotional distress, and reputational harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

Compensatory damages against Defendants Roxanne Cardona and Rendon for false imprisonment, including damages for the seven days Plaintiff spent in jail, in an amount to be determined by the jury.

Compensatory damages against Defendants Roxanne Cardona and Rendon for bond paid in the amount of $6,500.

Compensatory damages against Defendants Roxanne Cardona and Rendon for emotional distress, humiliation, and reputational harm in an amount to be determined by the jury.

Punitive damages against Defendants Roxanne Cardona and Rendon in the amount of $500,000 sufficient to punish them for their reckless and intentional conduct and to deter similar conduct in the future.

Nominal damages against Defendants Roxanne Cardona and Rendon for the violation of Plaintiff's constitutional rights.

Reasonable attorney's fees and costs pursuant to 42 USCS § 1988.

Injunctive relief requiring the City of Kirby to remove the illegal signs posted pursuant to Texas Penal Code sections 30.06 and 30.07 that prohibit licensed handgun carry at council meetings in violation of state law.

Injunctive relief requiring the City of Kirby and the Kirby Police Department to adopt and enforce policies prohibiting retaliation against citizens for protected speech, including criticism of government policies and officials.

Declaratory relief declaring that Defendants' actions violated Plaintiff's rights under the First Amendment, Fourth Amendment, and Fourteenth Amendment to the United States Constitution.

Pre-judgment and post-judgment interest as allowed by law.

Such other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

GFA Law, PLLC

CJ Grisham
Texas State Bar No. 24124533
cj@cjgrisham.com
3809 S. General Bruce Dr.
Suite 103-101
Temple, Texas 76504
P: 254-405-1726

*Attorney for Plaintiff Jack Miller*

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record via ECF filing on this 22nd day of March, 2026.

_____

CJ Grisham